# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SUMMIT ESTATE, INC.,**<br>Plaintiff,<br>v.<br>**UNITED HEALTHCARE INSURANCE COMPANY,**<br>Defendant. | CASE NO. 4:19-cv-06724 YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 22 |

Plaintiff Summit Estate, Inc., brings this action against defendant United Healthcare Insurance Company ("United") for claims arising out of United's alleged failure to pay for substance-abuse-treatment services at the usual, customary, and reasonable rate ("UCR"). Summit Estate provided these services to patients with health insurance policies administered by United. In the complaint, Summit Estate asserts claims for breach of contract, intentional misrepresentation, negligent misrepresentation, fraudulent concealment, negligent non-disclosure, promissory estoppel, prohibitory injunctive relief, quantum meruit, a claim under California's Unfair Competition Law ("UCL"), and a claim under the Employee Retirement Income Security Act of 1974 ("ERISA").

Now pending is United's motion for judgment on the pleadings, which seeks judgment with respect to all state-law claims in the operative complaint on the grounds that such claims are preempted by ERISA or, alternatively, are inadequately pleaded.

Having carefully considered the pleadings and the parties' briefs, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion for judgment on the pleadings **WITH LEAVE TO AMEND**.

//

## I. BACKGROUND

Summit Estate allege as follows:

Summit Estate provided substance-abuse-treatment services to patients who had health insurance policies that United administered, underwrote, or issued. First Am. Comp. ¶¶ 1-5, Docket No. 1-1. Summit Estate contacted United "to verify insurance benefits and was advised in all cases that the policies provided for and Defendants would pay for treatment at the usual, reasonable and customary rate (UCR)." *Id.* ¶ 6. Summit Estate relied on these representations in providing services to United-insured patients. *Id.* "Within the past two years," United breached its agreement with Summit Estate "by refusing to pay Plaintiff the represented and agreed upon UCR rate but rather paid a different and significantly lower amount for treatment." *Id.* ¶ 8. Summit Estate alleges that it would suffer "an unconscionable injury" if United is not required to pay "the represented/agreed to UCR rate." *Id.* Summit Estate alleges that it received from United-insured patients "assignments of insurance benefits and powers of attorney whereby the insurance benefits under the plans were assigned to Plaintiff[.]" *Id.* ¶ 56.

Summit Estate's claims, listed above, are all predicated on the theory that United failed to pay Summit Estate for the substance-abuse-treatment services at issue at the UCR notwithstanding its representations that it would do so. Initially, plaintiff filed this action in state court on May 1, 2017. In the original complaint, Summit Estate asserted only the state-law claims, not one under ERISA. *See* Docket No. 1-3. Summit Estate represents that, after United indicated a desire to add an ERISA affirmative defense to its answer, the parties stipulated to permit United to file an amended answer to the original complaint, and to permit Summit Estate to file an amended complaint. *See* Opp'n at 6, Docket No. 25. Pursuant to that stipulation, Summit Estate filed the operative complaint in state court, which asserts an ERISA claim in addition to the state-law claims asserted in the original complaint. Docket No. 1-1. United then removed the action to this Court on October 18, 2019. Notice of Removal, Docket No. 1.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court may grant judgment on the

2

1  pleadings where there are no issues of material fact and the moving party is entitled to judgment as
2  a matter of law when taking the allegations in the pleadings as true. *Gregg v. Haw. Dep't of Pub.*
3  *Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation omitted). This standard is "functionally
4  identical" to the standard for determining a motion to dismiss under Rule 12(b)(6). *Id.*
5  Accordingly, a court need not accept as true factual allegations that are conclusory or conclusions
6  of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted). "As with a Rule
7  12(b)(6) motion to dismiss, a court granting judgment on the pleadings pursuant to Rule 12(c)
8  should grant leave to amend even if no request for leave to amend has been made, unless it is clear
9  that amendment would be futile." *Finley v. Capital One*, No. 16-CV-01392-YGR, 2017 WL
10 1365207, at *2 (N.D. Cal. Apr. 14, 2017) (Gonzalez Rogers, J.) (citation and internal quotation
11 marks omitted). When ruling on a motion for judgment on the pleadings, a court may consider
12 documents that the pleadings incorporate by reference, as well as matters that are subject to
13 judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation
14 omitted). The court "need not . . . accept as true allegations that contradict matters properly
15 subject to judicial notice or by exhibit" attached to the complaint. *Id.*

**III.   DISCUSSION**

United moves to dismiss all state-law claims in the operative complaint on the ground that such claims are preempted by ERISA under the conflict preemption provision, ERISA Section 514(a), 29 U.S.C. § 1144(a). United counters that these claims depend on the existence and terms of ERISA plans because they are premised on allegations that United represented during verification-of-benefit communications with Summit Estate that the plans of Summit Estate's patients covered the substance-abuse-treatment services at the UCR and that United would pay for such services at the UCR in accordance with the plans. In the alternative, United argues that Summit Estate's state-law claims are inadequately pleaded.

The Court addresses each of these arguments in turn.

**A.   Preemption**

ERISA Section 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). "While this section

3

suggests that the phrase 'relate to' should be read broadly, the Supreme Court has recently admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995)). "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA 'if it has a connection with or reference to such a plan.'" *Id.* (citation omitted). "In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient 'reference' exists to support preemption." *Id.* (citations omitted). "In determining whether a claim has a 'connection with' an employee benefit plan, courts in this circuit use a relationship test. Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant." *Id.* (citations omitted).

Here, Summit Estate's state-law claims are based in tort or equitable concepts and do not necessarily depends on the existence or terms of an ERISA plan. Summit Estate's allegations raise the inference that United confirmed that the services at issue were covered by the patients' policies and, separately, that United represented that it would pay for such services at the UCR. First Am. Compl. ¶¶ 5-6. When construing these allegations in Summit Estate's favor, as the Court must at this stage, United's alleged representations regarding payment for the services at issue are independent of any statements that United allegedly made with respect to the insurance policies of Summit Estate's patients. Accordingly, given the procedural posture of this, the Court does not find that Summit Estate's state-law claims depend on either the existence or the terms of an ERISA plan, and therefore, Summit Estate's claims are not preempted under ERISA Section 514(a). *Cf. Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190-91 (9th Cir. 2010) ("[W]here the existence of [an ERISA] plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted [under Section 514(a)]") (citation and internal quotation marks omitted).

1    Having concluded that Summit Estate's state-law claims are not preempted by ERISA, the
2    Court now turns to the question of whether such claims are adequately pleaded.

### B. Adequacy of the Allegations

#### 1. Breach of an Express or Implied Contract

"[T]he vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration. As to the basic elements, there is no difference between an express and implied contract. While an express contract is defined as one, the terms of which are stated in words, an implied contract is an agreement, the existence and terms of which are manifested by conduct. As the cases explain, both types of contract are identical in that they require a meeting of minds or an agreement." *Div. of Labor Law Enf't v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977) (internal citations omitted). A claim for breach of contract requires (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). A claim for breach of an implied contract has the same elements as a claim for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct. *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).

Summit Estate asserts a claim for breach of contract and another for breach of an implied contract. First Am. Compl. ¶¶ 9-12, 50-53. These claims are premised on allegations that United represented, when Summit Estate contacted United to verify available benefits under its patients' plans, that it would pay for the substance-abuse-treatment services at issue at the UCR, and that Summit Estate relied on United's representations before providing the services to its patients. *Id.* United allegedly failed to pay for the services at issue at the UCR. *Id.* ¶ 8.

United moves to dismiss these claims on the basis that Summit Estate alleges no facts showing that United expressed an intent, either by words or conduct, to be bound to pay for the services at issue. United argues that its alleged verification of coverage for the services at issue does not demonstrate an intent to enter into a contract to pay for such services.

United's arguments are premature. As noted above, Summit Estate alleges that United did more than merely verify coverage for the services in question. Summit Estate's allegations raise the inference that, apart from United's confirmation that the services at issue were covered by the patients' insurance plans, United orally agreed and represented that it would pay for such services at the UCR. *Id.* ¶¶ 5-6. That is sufficient for the Court to infer at the pleading stage that United expressed an intent to be bound to pay for the services in question at the UCR once Summit Estate provided the services to its patients.

United's reliance on *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.* is misplaced. 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000). There, the district court held that a claim for breach of an oral contract failed at the summary judgment stage because the court could not infer, based on the insurer's verification of coverage alone, that the defendant had exhibited an intent to promise to pay for the medical services at issue. *Id.* Here, in contrast to *Cedars Sinai*, Summit Estate's breach-of-contract claims are not premised on United's verification of benefits alone, but instead are based on allegations that United represented that it would pay for the services at issue.

Accordingly, the Court denies United's motion for judgment on the pleadings as to Summit Estate's claims for breach of express and implied contract.

### 2. Intentional Misrepresentation, Negligent Misrepresentation, Fraudulent Concealment, and Negligent Non-Disclosure

Summit Estate asserts claims for intentional misrepresentation, negligent misrepresentation, fraudulent concealment, and negligent non-disclosure. First Am. Compl. ¶¶ 13-28. These claims are premised on allegations that United's representations to Summit Estate that it would pay for the substance-abuse-treatment services at issue at the UCR were fraudulent because United knew but concealed from Summit Estate that it would pay for such services at a significantly lower amount than the UCR. *Id.*

United moves for judgment on the pleadings as to these claims on the ground that the allegations upon which these claims are premised do not satisfy Rule 9(b).

Summit Estate concedes in its opposition that each of these claims is predicated on allegations that sound in fraud.[1] Opp'n at 15, Docket No. 25. The Court agrees and concludes that the alleged fraudulent conduct by United that underlies these claims must be pleaded with the particularity required by Rule 9(b) albeit the detail required is not as itemized as United would prefer. *See Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011) ("Plaintiffs allege three fraud based claims: intentional misrepresentation, fraudulent concealment, and negligent misrepresentation. All of these claims are subject to the heightened pleading requirements pursuant to Federal Rule of Civil Procedure 9(b)."); *Lack v. Cruise Am., Inc.*, No. 17-CV-03399-YGR, 2017 WL 3841863, at *4 (N.D. Cal. Sept. 1, 2017) (Gonzalez Rogers, J.) (holding that claim for negligent misrepresentation is subject to Rule 9(b)); *Vess*, 317 F.3d at 1106 (holding that allegations of fraudulent conduct must be pleaded with particularity even where fraud is not an essential element of the claim they support). To satisfy Rule 9(b), a plaintiff must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Stated differently, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F. 3d at 1106 (citation omitted).

Relying on *Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821, 838 (2016), Summit Estate argues that it is not required to satisfy Rule 9(b)'s requirements with respect to United's allegedly fraudulent statements because United has access to information regarding the details of such statements, as the parties have already exchanged some discovery. Opp'n at 15-16, Docket No. 25.

---

[1] In a different section of its opposition, Summit Estate states that the Ninth Circuit held in *Vess*, 317 F.3d at 1106, that Rule 9(b) does not apply to claims for negligent non-disclosure. Opp'n at 17, Docket No. 25. Summit Estate misreads the holding in *Vess*. There, the Ninth Circuit held that allegations that "describe non-fraudulent conduct" are not subject to Rule 9(b). *Id*. *Vess* does not alter the Court's conclusion, above, that because Summit Estate's claim for negligent non-disclosure is supported by allegations of fraudulent conduct, such allegations must satisfy the requirements of Rule 9(b). As noted, Summit Estate concedes in its opposition that the allegations that underlie its claim for negligent non-disclosure are the same as the ones that form the basis of its other fraud-based claims, which, as Summit Estate admits, sound in fraud. Opp'n at 15-16.

7

1        In *Tenet*, a hospital sued an insurer and others because of the defendants' refusal to pay for the cost of medical services that the hospital had provided to an insured patient after the insurer authorized the services during extensive communications with the hospital. 245 Cal. App. 4th at 825. At issue was whether the hospital had adequately stated a claim for intentional fraud against the insurer. The California Court of Appeal held that the hospital had "sufficiently met the pleading requirements for intentional fraud" because it had pleaded sufficient facts regarding the allegedly fraudulent misrepresentations by the insurer, as the hospital had identified multiple written and oral communications, their dates and specified times, the means by which they were made, and the employees of the hospital to whom they had been made. *Id.* at 838-39. The Court of Appeal held that it was not necessary for the hospital to allege in the complaint the name of every employee of the insurer that had made the misrepresentations at issue, because the complaint otherwise "provided sufficient information to permit [the insurer], the party with superior knowledge of who was responsible for preparing the documents in question, to identify the specific individual or individuals." *Id.* at 840 (citation omitted).

         Summit Estate's reliance on *Tenet* for the proposition that it need not plead any additional facts with respect to United's allegedly fraudulent statements does not fully persuade. Nothing in *Tenet* supports the notion that a plaintiff can be excused from complying with Rule 9(b) because the parties have engaged in some discovery. While *Tenet* may have held that the plaintiff was not required to identify every employee of the defendant who participated in the fraudulent communications at issue, the court did so only after it concluded that the plaintiff's complaint already contained sufficient allegations to enable the defendant to identify the employees.

         Here, by contrast, Summit Estate has alleged none of the specifics of United's allegedly fraudulent communications that should be within Summit Estate's knowledge. The generic references must be expanded upon even if the names of individual employees are unknown. Accordingly, the Court cannot conclude that Summit Estate has satisfied the requirements of Rule 9(b). The Court grants United's motion for judgment on the pleadings as to Summit Estate's claims for intentional misrepresentation, negligent misrepresentation, fraudulent concealment, and negligent non-disclosure, with leave to amend.

8

### 3.      **Promissory Estoppel**

Promissory estoppel "is based upon the equitable doctrine that a promisor is bound when he should reasonably expect a substantial change of position (act or forbearance) in reliance on his promise if injustice can be avoided only by the enforcement of the promise." *Div. of Labor Law*, 69 Cal. App. 3d at 275-76 (citations omitted). A claim for promissory estoppel "has three basic elements: (1) promise; (2) reliance; and (3) injury." *Id.* (citations omitted).

Summit Estate asserts a claim against United for promissory estoppel, which is predicated on allegations that United knew that it would not pay for the services at issue at the UCR when it represented to Summit Estate that it would do so. First Am. Compl. ¶¶ 6-8, 29-32. Summit Estate further alleges that it relied on United's representations in providing the services at issue to its patients. *Id.* Summit Estate alleges that United should be estopped from "asserting any payment amount contrary" to its representations that it would pay for the services at issue at the UCR. *Id.* ¶ 31.

United moves for judgment on the pleadings as to this claim on the ground that Summit Estate has not alleged a promise. United argues that this claim is predicated on United's alleged representation that the services in question were covered under the patients' plans. Relying on *Pac. Bay Recovery, Inc. v. California Physicians' Servs.*, Inc., 12 Cal. App. 5th 200, 215 n.16 (2017), United contends that a representation about whether medical services are covered under an insurance plan does not constitute a promise.

United's arguments fail for the same reasons discussed above in connection with Summit Estate's claims for breach of contract. Summit Estate's allegations raise the inference that, apart from United's confirmation that the services at issue were covered by the patients' plans, United represented that it would pay for such services at the UCR. First Am. Compl. ¶¶ 5-6. These allegations are sufficient for the Court to infer at the pleading stage that United promised to pay for the services in question at the UCR once Summit Estate provided the services to its patients. In light of these allegations, *Pac. Bay. Recovery* is inapposite. *See* 12 Cal. App. 5th at 215 n.16 (holding that the plaintiff failed to state a claim for promissory estoppel based on an insurer's

1    failure to pay for medical services because the complaint lacked allegations suggesting that the

2    insurer had promised to pay for the services).

3    Accordingly, the Court will deny United's motion for judgment on the pleadings as to

4    Summit Estate's claim for promissory estoppel.

### 4. Prohibitory Injunctive Relief

Summit Estate asserts a claim for "prohibitory injunctive relief," which is predicated on allegations that United has engaged in a continuing pattern of conduct wherein it authorizes substance-abuse-treatment services to be paid at the UCR, but later pays only a "small fraction" of the UCR. First Am. Comp. ¶¶ 33-36. Summit Estate alleges that this conduct is violative of California Health and Safety Code sections 1371.8 and 1371.37 and California's "mental health parity laws." *Id.* ¶ 36.

United moves for judgment on the pleadings as to this claim on the grounds that (1) "prohibitory injunctive relief" is not a standalone claim under California law; and (2) Summit Estate's request for injunctive relief cannot be granted based on violations of California Health and Safety Code sections 1371.8 and 1371.37 and California's Mental Health Parity Act, California Health and Safety Code section 1374.72, which are a part of the Knox-Keene Health Care Service Plan Act of 1975 ("Knox-Keene Act"), because the Knox-Keene Act contains no private right of action.

In its opposition, Summit Estate does not address either of United's arguments, nor does it attempt to show that its request for injunctive relief can be predicated exclusively on violations of the Knox-Keene Act. Summit Estate's only argument with respect to this claim is that "[i]njunctive relief is an available and appropriate remedy under the UCL claim alleged in the ninth cause of action of the FAC." *See* Opp'n at 18, Docket No. 25.

The Knox-Keene Act, which is codified as California Health and Safety Code sections 1340 to 1399, contains no private right of action that permits entities such as Summit Estate to seek injunctive or any other kind of relief for violations of the Act. *See California Pac. Reg'l Med. Ctr. v. Glob. Excel Mgmt., Inc.*, No. 13-CV-00540 NC, 2013 WL 2436602, at *5 (N.D. Cal. June 4, 2013) (noting that the "California Court of Appeal has observed that private parties do not

have a general power to enforce the Knox–Keene Act") (citing *Blue Cross of California, Inc. v. Superior Court*, 180 Cal. App. 4th 1237, 1250 (2009)); *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1299 (1993) (holding that a private party lacks power to enforce the Knox-Keene Act because that power "has been entrusted exclusively to the Department of Corporations, preempting even the common law powers of the Attorney General"). Accordingly, the Court agrees with United, and with Summit Estate's implicit concession, that Summit Estate's request for injunctive relief fails to the extent that it arises *exclusively*[2] out of alleged violations of the Knox-Keene Act. *See Stanford Hosp. & Clinics v. Humana, Inc.*, No. 5:13-CV-04924 HRL, 2015 WL 5590793, at *8 (N.D. Cal. Sept. 23, 2015) (granting summary judgment in favor of the defendant with respect to claim for violations of the Knox-Keene Act on the ground that there is no "private right of action to enforce" the Act).

Accordingly, the Court grants United's motion for judgment on the pleadings as to Summit Estate's claim for injunctive relief to the extent that it is predicated exclusively on violations of the Knox-Keene Act.

### 5. Quantum Meruit

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entm't. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) (citation omitted). The elements of quantum meruit are: (1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid. *Haggerty v. Warner*, 115 Cal App. 2d 468, 475 (1953).

---

[2] Although the Knox-Keene Act provides no private right of action, a private party can nevertheless seek injunctive relief based on alleged violations of the Act by asserting a claim under the UCL. *See Blue Cross of California, Inc. v. Superior Court*, 180 Cal. App. 4th 1237, 1250 (2009) (holding that, "although the Knox–Keene Act expressly authorizes the [Department of Managed Health Care] to enforce the statute and does not include a parallel authorization for suits by private individuals, private individuals can bring suit under the UCL for violations of the Knox–Keene Act"). Here, Summit Estate's UCL claim is premised at least in part on violations of the Knox-Keene Act. The viability of Summit Estate's UCL claim is not affected by the Court's conclusion, above, that the Knox-Keene Act contains no private right of action.

11

1   Summit Estate asserts a claim for quantum meruit against United, which is based on
2   averments that Summit Estate relied on United's representations that it would pay for the
3   substance-abuse-treatment services at issue at the UCR.  First Am. Compl. ¶¶ 37-42.
4   United moves for judgment on the pleadings as to this claim on the basis that Summit
5   Estate has not alleged that it rendered the substance-abuse-treatment services at issue pursuant to
6   United's request.  Summit Estate does not make any argument in its opposition to try to show that
7   the operative complaint contains allegations showing that it provided the services at issue at
8   United's request.
9   Here, the Court agrees with United. The operative complaint is devoid of any allegations
10  that raise the inference that United itself requested that Summit Estate provide substance-abuse-
11  treatment services to United-insured patients.  Accordingly, the Court grants United's motion for
12  judgment on the pleadings as to Summit Estate's claim for quantum meruit.  It is not at all
13  apparent that amendment is possible consistent with the theory of this case and counsel's Rule 11
14  obligations.  Nonetheless, out of an abundance of caution, and because leave to amend has been
15  granted on other claims, the Court grants leave to amend as to this claim.

**6.      UCL**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each of these three adjectives captures a separate and distinct theory of liability."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).

Summit Estate asserts a claim under each of the three prongs of the UCL based on the theory that United allegedly engaged in a pattern of conduct that is fraudulent, unfair, and unlawful by allegedly representing that it would pay Summit Estate for substance-abuse-treatment services at the UCR when it knew that it would pay a substantially lower amount.  First Am. Compl. ¶¶ 43-49.   Summit Estate's claim under the unlawful prong of the UCL is predicated on violations of the Knox-Keene Act, California Health and Safety Code sections 1371.8 and 1371.37.  *Id.*  Summit Estate alleges that it has been "directly damaged" by this conduct in the

12

form of "monetary damages." *Id.* ¶ 45.  Summit Estate seeks injunctive relief to stop United from engaging in these practices, as well as disgorgement of illicit gains. *Id.* ¶ 48.

United moves for judgment on the pleadings as to this claim on two grounds.  First, it argues that Summit Estate lacks standing under the UCL because Summit Estate is suing as an "assignee of benefits from a patient" and because it has not suffered injury as a result of the alleged conduct that violates the UCL.  Second, United argues that Summit Estate's request for injunctive relief under the UCL fails because Summit Estate has an adequate remedy at law.  The Court considers each of these arguments in turn.

### a.  Standing

To have standing under the UCL, the plaintiff must have "suffered injury in fact and [must have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code, § 17204.  In *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1002 (2009) ("*Amalgamated*"), the Supreme Court of California held that a plaintiff suing as an "assignee of an unfair competition claim" who did not allege to have suffered injury as a result of unfair competition lacked standing under the UCL. *Id.*  The Supreme Court of California reasoned that permitting the assignee to "stand in the shoes of the original, injured claimant" would directly violate the express statutory requirement in Section 17204 of the UCL that a private action under that law be brought exclusively by a person who has "suffered injury in fact and has lost money or property as a result of the unfair competition."  *Id.* (citation and internal quotation marks omitted).  In *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 899 (C.D. Cal. 2012), the district court relied on *Amalgamated* in dismissing UCL claims brought by medical providers against insurers "via assignment." *Id.*  The court reasoned that the claims were subject to dismissal for lack of UCL standing, because the medical providers sought "to recover derivatively for the injuries inflicted upon their subscriber-patients, and not their own injuries." *Id.*  The court noted, however, that to the extent that the medical providers "suffered their own independent and direct injuries as a result of the unfair competition, they may pursue their own UCL claims." *Id.* (internal quotation marks omitted).

13

United argues that *Amalgamated* and *In re WellPoint* require the dismissal of Summit Estate's UCL claim because Summit Estate is suing as an assignee and does not allege that it itself suffered an injury within the meaning of the UCL. The Court disagrees. *Amalgamated* and *In re WellPoint* are inapposite. Here, and unlike in those cases, Summit Estate's UCL claim is not premised on injuries that third parties suffered. Instead, Summit Estate's UCL claim is premised on its own injuries arising from United's alleged conduct in violation of the UCL, in the form of having received a lower payment from United for the services at issue than what United allegedly represented it would pay. These alleged injuries are cognizable under the UCL. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (holding that injury under the UCL exists, in relevant part, where the plaintiff "surrender[s] in a transaction more, or acquire[s] in a transaction less" than it otherwise would have or is "deprived of money or property to which [it has] a cognizable claim"). Because Summit Estate alleges that it suffered its own injuries as a result of United's alleged conduct, and because Summit Estate does not bring its UCL claim "via assignment"[3] and brings it, instead, on its own behalf, neither *Amalgamated* nor *In re WellPoint* requires the dismissal of Summit Estate's UCL claim for lack of standing.

### b.    Adequate Remedy at Law

Remedies available under the UCL are "cumulative to each other and to the remedies or penalties available under all other laws of this state." Cal. Bus. & Prof. Code § 17205.

United argues that Summit Estate's request for injunctive relief under the UCL is subject to dismissal because equitable relief is not available where the plaintiff has an adequate remedy at law, and here, Summit Estate has not established that it has no adequate remedy at law.

The Court declines to dismiss Summit Estate's claim for injunctive relief under the UCL on the basis that Summit Estate seeks both legal and equitable remedies in the complaint. United has cited no controlling authority that precludes a plaintiff from asserting equitable claims in the alternative to claims for legal remedies at the pleading stage. While United cites some non-

---

[3] The assignments alleged in the complaint do not include the assignment of claims under the UCL; they are limited to the assignment of insurance benefits for the purpose of asserting claims under ERISA. *See, e.g.*, First Am. Compl. ¶ 56.

binding opinions in which district courts dismissed equitable claims under the UCL that were pleaded in the alternative to other claims seeking legal relief, this Court declines to follow them. The Court concludes that allowing a plaintiff to plead a claim for injunctive relief under the UCL in the alternative to claims for legal remedies is consistent with the broad remedial purpose of the UCL, and is also consistent with Section 17205 of the UCL, which provides that UCL remedies are "cumulative" to other available remedies. *See Tucker v. Post Consumer Brands, LLC*, No. 19-CV-03993-YGR, 2020 WL 1929368, at *6 (N.D. Cal. Apr. 21, 2020) (Gonzalez Rogers, J.) (declining to dismiss UCL claim for equitable relief on the ground that allowing the plaintiff to seek alternative remedies at the pleading stage is consistent with "the broad remedial purposes of the California consumer protection statutes").

In light of the foregoing, the Court denies United's motion for judgment on the pleadings as to Summit Estate's UCL claim.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011). The Court, however, need not grant leave to amend where amendment would be futile. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

Because it is not clear that amendment would be futile as to the state-law claims with respect to which the Court has granted United's motion, the Court will grant Summit Estate leave to amend them.

//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** United's motion for judgment on the pleadings **WITH LEAVE TO AMEND**. Within thirty (30) days of the date this order is filed, Summit Estate may file an amended complaint that addresses the deficiencies discussed above with respect to the state-law claims that the Court has dismissed. United may file a response to the amended complaint within thirty (30) days of the date it is filed.

This order terminates Docket Number 22.

**IT IS SO ORDERED.**

Dated: September 10, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**